# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BOBBY JOHNATHAN PERDUE, II,　　）
　　　　　　　　　　　　　　　　）
　　　　　　Plaintiff,　　　　　）
　　　　　　　　　　　　　　　　）
　　　v.　　　　　　　　　　　　）　　　　1:17cv403
　　　　　　　　　　　　　　　　）
TITUS HARRISON,　　　　　　　　）
　　　　　　　　　　　　　　　　）
　　　　　　Defendant.　　　　　）

## MEMORANDUM OPINION AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on Defendant's Motion to Dismiss (Docket Entry 14) (the "Motion"). For the reasons that follow, the Court should grant in part and deny in part the Motion.

## BACKGROUND

Bobby Johnathan Perdue, II (the "Plaintiff"), a pretrial detainee proceeding pro se, commenced this action pursuant to 42 U.S.C. § 1983 against Titus Harrison (the "Defendant") in his individual and official capacities, alleging that Defendant used excessive force against Plaintiff in violation of his fourteenth-amendment rights. (See Docket Entry 2 (the "Complaint") at 5.)[1] According to the Complaint:

On April 23, 2017, Defendant, a sergeant with the Rockingham County Sheriff's Department, conducted a search of Plaintiff's cell

---

[1] Citations to Docket Entry pages utilize the CM/ECF footer's pagination.

in the Rockingham County Jail.  (Id. at 4.)  Defendant "skipped cells 108-112 and came in [Plaintiff's cell] first.  This [wa]s the second time [Defendant] ha[d] singled [Plaintiff] out."  (Id. at 7.)  Defendant "found contraband under the mat of Plaintiff[']s cell mate" and "handcuffed and escorted [Plaintiff and his cell mate] to holding cells in Booking."  (Id. at 4.)  "Plaintiff and his cell mate were then escorted back to their cell and told to pack," and subsequently "were escorted . . . to Segregation." (Id.)  This exchange then occurred:

> [Plaintiff] asked [Defendant,] "[W]hy do you have it out for me?  You['re] always fucking with me."  [Defendant] mocked [Plaintiff] in reply.  [Plaintiff] asked [Defendant] to "stop mocking [him]," to which [Defendant] mocked [him] again in reply.  [Plaintiff] told [Defendant] he "was a child and need[ed] to grow up. You['re] a sergeant act like it!"  [Defendant's] reply was "you['re] a pill head.  You need to stop doing pills[,] your eyes are rolling in the back of your head!" [Plaintiff] said[,] "You need to stop doing steroids. That[']s why Miss Terry won[']t marry you, your dick[']s shribbled [sic] up!"

(Id. at 9; accord id. at 4-5.)

At that point, Defendant "told Plaintiff to enter the bubble,"[2] "closed the door sep[a]rating himself and Plaintiff from the other officers," and "directed Plaintiff to put his box down." (Id. at 5.)  After Plaintiff did so, Defendant "stepped into Plaintiff[']s face" (id.), in response "to which [Plaintiff] held

---

[2] "The bubble consist[s] of three cells within a glass enclosure that usually houses mentally ill persons . . . ." (Docket Entry 2 at 9.)

[his] hands out to [his] side in a non threat[en]ing way and tried to back away" (id. at 9; accord id. at 5). Defendant then "grabbed Plaintiff by his throat using his right hand, he then slammed Plaintiff on the ground by his throat. While still choking Plaintiff[, Defendant] used his left hand to strike Plaintiff in the right eye causing bruising and swelling." (Id. at 5.) "At no point did Plaintiff resist or refuse [Defendant]." (Id.) "Some other officers then piled on top of [Plaintiff] and restrained [his] hands while [Defendant] was still choking [him]. The whole time [Defendant] was on top of [Plaintiff] he was smiling saying 'you ain't ready for this' repeatedly." (Id. at 10.)[3]

"The following day . . . Plaintiff was took [sic] to the nurse and treated for a swollen bruised right eye, scrapes and abrasions on his left hand, a possible sprain of his right arm and wrist and bruising on his neck, legs, and hip." (Id. at 5; see also id. at 11 (alleging that the nurse prescribed Plaintiff ibuprofen).) Plaintiff contends that Defendant's use of excessive force violated

---

[3] In Exhibit B to the Complaint, Plaintiff describes additional interactions with Defendant and other officers that occurred on April 23, 2017. (See Docket Entry 2 at 10.) However, as explained below, the incident in the bubble independently states a claim as alleged, and accordingly, at least at this stage of the proceedings, the Court need not further address the allegations regarding subsequent events.

his constitutional rights (id. at 5),[4] and requests declaratory and injunctive relief as well as money damages (id. at 14).

In response, Defendant moved to dismiss the Complaint (see Docket Entry 14), alleging first that it fails to assert a viable official-capacity claim (see Docket Entry 15 at 5-6). Defendant further maintains that the Complaint lacks sufficient factual matter regarding its individual-capacity claim and that, regardless, qualified immunity precludes relief. (See id. at 7-11.) Plaintiff filed a response. (Docket Entry 18.) Defendant did not reply. (See Docket Entries dated Aug. 8, 2017, to present.)

## DISCUSSION

### I. Official Capacity Claim

With respect to local government officials, official capacity liability attaches under Section 1983 only if "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Collins v. City of Harker Heights,

---

[4] Plaintiff cites the Eighth Amendment as the predicate for his excessive force claim (Docket Entry 2 at 5), but the Eighth Amendment does not apply until after conviction and sentence, Lee v. O'Malley, 533 F. Supp. 2d 548, 552 n.5 (D. Md. 2007). Instead, pretrial detainees in state custody, such as Plaintiff, may bring excessive force claims under the Fourteenth Amendment. See Kingsley v. Hendrickson, ___ U.S. ___, ___, 135 S. Ct. 2466, 2475 (2015); see also Haizlip v. Alston, No. 1:14CV770, 2016 WL 4184426, at *9 (M.D.N.C. Aug. 5, 2016) (analyzing pro se pretrial detainee's excessive force claim under the Fourteenth Amendment although his complaint referenced only the Eighth Amendment).

-4-

Tex., 503 U.S. 115, 121 (1992) (internal quotation marks omitted). Notably, an official's discretionary acts, exercised in carrying out official duties, do not necessarily represent official policy. Gantt v. Whitaker, 203 F. Supp. 2d 503, 509 (M.D.N.C. 2002). "Rather, the official must have 'final authority' over government policy with respect to the action in question" to trigger official capacity liability. Id. (quoting Pembaur v. Cincinnati, 475 U.S. 469, 481-82 (1986)).

Here, Plaintiff alleges injury from Defendant's actions, but does not assert that Defendant acted pursuant to any official policy or custom of either the Rockingham County Sheriff's Office or the Rockingham County Detention Facility where Defendant works. (See generally Docket Entry 2.) Nor does the Complaint allege that Defendant possesses "final authority" over any such policy. (Id.) Accordingly, the Court should dismiss Plaintiff's claim against Defendant in his official capacity.

## II. Individual Capacity Claim

### A. Adequacy of the Complaint

Defendant also argues that Plaintiff's Complaint fails to satisfy the pleading standards set forth in Rule 8 of the Federal Rules of Civil Procedure (the "Rules"). (See Docket Entry 15 at 7.) Specifically, Defendant asserts that the Complaint fails to (1) adequately state the grounds for the Court's jurisdiction, and

(2) plead sufficient factual matter to survive Rule 12(b)(6) dismissal. (See id. at 7-8.) These arguments lack merit.[5]

Rule 8 states that a pleading must contain "a short and plain statement for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1). Defendant contends that Plaintiff's "mere use of a standard stock form with a heading that references the 'Civil Rights Act, 42 U.S.C. § 1983'" does not "fulfill the requirement set forth in [Rule 8]." (Docket Entry 15 at 7.) Defendant does not (and cannot) provide decisional authority to support this contention (see id.), as courts do not take such a hyper-technical view of Rule 8(a), see, e.g., Carr v. Virginia Dep't of Veterans Servs., No. 3:13CV355, 2014 WL 1369467, at *1 (E.D. Va. Apr. 7, 2014) ("It is true that [the pro se plaintiff] has not included an explicit statement of jurisdiction in his Complaint, and that this omission violates Fed. R. Civ. P. 8(a)(1). . . . However, given a reasonable construction, the Complaint seeks redress for violation of federal law by an entity acting under the color of state law.

---

[5] Defendant further contends that, by failing to mention the Fourteenth Amendment in the Complaint, Plaintiff forfeited any claim pursuant to that Amendment. This argument falls short as well. First, a pro se complaint must "be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). Second, Plaintiff's misidentification of the relevant constitutional provision does not constrain the Court. See Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the [C]ourt, the [C]ourt is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.").

Thus, it is preferable to interpret the Complaint as if it purports to assert federal jurisdiction."). Moreover, this Court directs prisoners to use the referenced form for pursuing Section 1983 claims. See, e.g., Perdue v. Page, No. 1:16CV1323, Docket Entry 5 (M.D.N.C. Jan. 12, 2017) (dismissing Plaintiff's Section 1983 claim with instructions to refile using proper 1983 forms); M.D.N.C. LR 7.1(d) ("All *pro se* complaints filed by state prisoners seeking relief under 42 U.S.C. [§] 1983 shall be filed . . . on appropriate forms . . . ."). Finally, the factual allegations combined with the Section 1983 reference in the Complaint satisfy Rule 8's requirements. Defendant's Rule 8 argument thus fails.

Defendant also suggests, without factual or legal support, that this Court should dismiss the Complaint for lack of personal jurisdiction. (See Docket Entry 15 at 7.) This Court may exercise personal jurisdiction over Defendant if (1) North Carolina's long-arm statute authorizes it and (2) the exercise of jurisdiction comports with due process under the Fourteenth Amendment. Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014). Plainly, this Court possesses personal jurisdiction over Defendant. Plaintiff alleges that the events giving rise to the instant suit occurred in Reidsville, North Carolina, located within the Middle District of North Carolina. (See Docket Entry 2 at 3-4.) The Complaint does not indicate whether Defendant qualifies as a domiciliary of North Carolina, but, even if he does

not, North Carolina's long-arm statute authorizes jurisdiction over Defendant in this instance, see N.C. Gen Stat. § 1-75.4(3), and existing law clearly indicates that this Court's exercise of jurisdiction over Defendant would not offend due process, see generally Hess v. Pawloski, 274 U.S. 352 (1927) (holding that Massachusetts's exercise of personal jurisdiction over an out-of-state motorist involved in an accident in the state did not violate the Fourteenth Amendment).

Moreover, Plaintiff's Complaint pleads sufficient factual matter to survive a motion to dismiss under Rule 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) "tests the sufficiency of a complaint," but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.3d 943, 952 (4th Cir. 1992). Accordingly, in reviewing a Rule 12(b)(6) motion, the Court must "accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff." Coleman v. Maryland Court of Appeals, 626 F.3d 187, 189 (4th Cir. 2010), aff'd sub nom., Coleman v. Court of Appeals of Md., 566 U.S. 30 (2012). The Court must also "draw all reasonable inferences in favor of the plaintiff." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks omitted).

To survive a Rule 12(b)(6) motion, a complaint must contain enough factual allegations "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To qualify as plausible, a claim needs sufficient factual content to support a reasonable inference of the defendant's liability for the alleged misconduct. Id. (citing Twombly, 550 U.S. at 556). The complaint need not contain detailed factual recitations, but must provide "fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (ellipsis in original) (internal quotation marks omitted). Moreover, a pro se complaint must "be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted), although the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted).

As to the particular claim in this case, the Due Process clause of the Fourteenth Amendment protects pretrial detainees from an officer's use of excessive force. See Kingsley v. Hendrickson, ___ U.S. ___, ___, 135 S. Ct. 2466, 2475 (2015). In Kingsley, the Supreme Court observed that "pretrial detainees (unlike convicted

prisoners) cannot be punished at all." Id.,    U.S. at   , 135 S. Ct. at 2475. Accordingly, a pretrial detainee can "prevail [on an excessive force claim] by showing that the [defendant's] actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the actions 'appear excessive in relation to that purpose.'" Id.,    U.S. at   , 135 S. Ct. at 2473 (quoting Bell v. Wolfish, 441 U.S. 520, 561 (1979)). Ultimately, a standard of objective reasonableness applies to a pretrial detainee's excessive force claim. Id.,    U.S. at   , 135 S. Ct. at 2472-73.[6]

The Supreme Court has provided several factors to analyze "the reasonableness or unreasonableness" of the alleged force used:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Id.,    U.S. at   , 135 S. Ct. at 2473 (citing Graham v. Connor, 490 U.S. 386, 396 (1989)). Although not exclusive, these factors

---

[6] Kingsley's "objective reasonableness" standard for fourteenth-amendment excessive force claims abrogates the previous standard used in the Fourth Circuit, which considered the officer's subjective intent as a factor. See Orem v. Rephann, 523 F.3d 442, 446 (4th Cir. 2008) ("In determining whether [this] constitutional line has been crossed, a court must look to such factors as . . . whether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm." (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)) (brackets in original)).

-10-

"illustrate the types of objective circumstances potentially relevant to a determination of excessive force." Id. In addition, "mere use of foul language . . . does not justify an objectively reasonable police officer knocking the [detainee] down, jumping on him, and breaking his nose. . . . [U]se of 'foul language' in a confined area . . . constitutes a mere 'nuisance' and not an immediate threat to the safety of the officers or others . . . ." Jones v. Buchanan, 325 F.3d 520, 530 (4th Cir. 2003).[7]

Against this backdrop, the first Kingsley factor (the relationship between the need for the use of force and the amount of force used) weighs in Plaintiff's favor. According to the Complaint, Plaintiff did not behave in a manner that would reasonably require Defendant to use force. (See Docket Entry 2 at 4-5.) Plaintiff complied with Defendant's orders to pack up and move to a different cell, and, even when Defendant "stepped into [his] face," Plaintiff "kept his hands low[,] placed by his sides in a non threatening manner, and tried to back away." (Id. at 5.) Assuming the situation required any force at all, "choke slam[ming]" and "jabb[ing]" Plaintiff in his eye constitute a disproportionate amount of force.

---

[7] Although Jones involved an excessive force claim under the Fourth Amendment, see Jones, 325 F.3d at 527, the Fourth Circuit has relied on Jones in the context of a pretrial detainee's fourteenth-amendment excessive force claim, see Sawyer v. Asbury, 537 F. App'x 283, 297 (4th Cir. 2013).

The second Kingsley factor (the extent of the plaintiff's injury) "weighs somewhat in [D]efendant's favor." Greene v. County of Durham Office of the Sheriff Dep't, No. 1:14-CV-153, 2016 WL 4507355, at *10 (M.D.N.C. Aug. 26, 2016). Plaintiff alleges that he suffered bruising, scrapes and abrasions, and a possible sprain, for which the nurse prescribed ibuprofen. (See id. at 5, 11.) Given that medical personnel deemed these injuries treatable with ibuprofen, they appear to qualify as "relatively minor." See Greene, 2016 WL 4507355, at *10 ("It is possible for a reasonable fact-finder to conclude on this record that [the plaintiff] suffered bruising, soreness, and a head injury. Nonetheless, the record reflects that these injuries were relatively minor, so [the second Kingsley] factor weighs in favor of the defendants.").

The third Kingsley factor (any effort made by the officer to temper or to limit the amount of force) favors Plaintiff. The Complaint contains no indication that Defendant attempted to limit the amount of force used. (See Docket Entry 2 at 10 (alleging that Defendant "was on top of" Plaintiff and "smiling[,] saying 'you ain't ready for this'" while other officers restrained Plaintiff's hands).)

Finally, the fourth, fifth, and sixth Kingsley factors (the severity of the security problem at issue, the threat reasonably perceived by the officer, and whether the plaintiff actively resisted) also favor Plaintiff. The Complaint lacks any suggestion

that Plaintiff failed to comply with Defendant's orders or behaved threateningly toward him.  Rather, it asserts that "[a]t no point did Plaintiff resist or refuse [Defendant]," but instead that he followed Defendant's orders to "put his box down" (id. at 5), and that Plaintiff "held [his] hands out to [his] side in a non threat[en]ing way and tried to back away" when Defendant "[got] in [his] face" (id. at 9).

In sum, all six Kingsley factors except the second clearly weigh in favor of Plaintiff.  Thus, contrary to Defendant's contentions, the Complaint states a claim of excessive force under the Fourteenth Amendment and sets out more than "arbitrary conclusions of law" (Docket Entry 15 at 9).  Defendant's Rule 12(b)(6) argument therefore fails.

**B. Qualified Immunity**

Defendant further asserts that qualified immunity shields him from Plaintiff's fourteenth-amendment claim.  (See id. at 9-11.) "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).  "The protection extends to all but the plainly incompetent or those who knowingly violate the law." Raub v. Campbell, 785 F.3d 876, 881 (4th Cir. 2015) (internal quotation marks omitted).  Under this

doctrine, "officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Id. (internal brackets and quotation marks omitted).

In evaluating qualified immunity, courts consider "(1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." Raub v. Campbell, 785 F.3d 876, 881 (4th Cir. 2015). As to the first prong, for reasons discussed in the preceding subsection, Plaintiff has sufficiently alleged a violation of his constitutional right to freedom from excessive force.

With respect to the second prong of the qualified immunity inquiry, the Court must deem a right "clearly established . . . [if] it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001), overruled in part on other grounds, Pearson, 555 U.S. at 227. In other words, "[t]he unlawfulness of the action must be apparent when assessed from the perspective of an objectively reasonable official charged with knowledge of established law." Lopez v. Robinson, 914 F.2d 486, 489 (4th Cir. 1990). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light

of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citation omitted).

In this case, the Complaint's allegations, taken as true, would show that Defendant violated Plaintiff's clearly established right. In rejecting a defense of qualified immunity under similar circumstances prior to the incident in question here, the Fourth Circuit noted that controlling "precedent made it clear to any reasonable officer that 'mere use of foul language . . . does not justify an objectively reasonable police officer knocking an arrestee down, jumping on him, and breaking his nose.'" Sawyer v. Asbury, 537 F. App'x 283, 297 (4th Cir. 2013) (quoting Jones, 325 F.3d at 530) (internal brackets omitted). In this case, although Defendant did not break Plaintiff's nose, he allegedly knocked Plaintiff down, choked him, and struck him in the eye in retaliation to insults. (See Docket Entry 2 at 4-5.) Under these circumstances, the face of the Complaint indicates that a reasonable officer would have known that Defendant's alleged conduct qualified as unlawful. Therefore, at least at this stage of the proceedings, the Court should deny Defendant's qualified immunity defense.

## CONCLUSION

The Complaint does not state a claim against Defendant in his official capacity. However, the Complaint adequately states a claim for relief against Defendant in his individual capacity, and

the facts as alleged do not entitle Defendant to qualified immunity.

**IT IS THEREFORE RECOMMENDED** that Defendant's Motion to Dismiss be granted as to the official-capacity claim and denied as to the individual-capacity claim.

This 24th day of October, 2017.

                                             /s/ L. Patrick Auld
                                              **L. Patrick Auld**
                              **United States Magistrate Judge**